**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EXPERIENCE INFUSION | § | |
| CENTER, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | C.A. NO. 4:17-cv-00034 |
| | § | |
| AETNA LIFE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

---

# DEFENDANT AETNA LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

---

OF COUNSEL:

ANDREWS KURTH KENYON LLP
        and
DIMITRI ZGOURIDES
State Bar No. 00785309
SDOT No. 16513
dzgourides@andrewskurth.com
MITCHELL A. REID
State Bar No. 24037346
SDOT No. 34728
mreid@andrewskurth.com
600 Travis, Suite 4200
Houston, Texas 77002
Telephone:  (713) 220-4200
Telecopier:  (713) 220-4285

JOHN B. SHELY
State Bar No. 18215300
SDOT No. 7544
jshely@andrewskurth.com
600 Travis, Suite 4200
Houston, Texas 77002
Telephone:  (713) 220-4200
Telecopier:  (713) 220-4285

ATTORNEY-IN-CHARGE FOR
DEFENDANT AETNA LIFE
INSURANCE COMPANY

## TABLE OF CONTENTS

Appendix ....................................................................... iii

Table of Authorities........................................................ iv

I.      NATURE AND STAGE OF PROCEEDING ................................. 1

II.     ISSUES ....................................................... 2

III.    SUMMARY ................................................. 3

IV.     Factual Background.......................................... 5

        A.    Experience Infusion is an Out-of-
              Network Provider Holding Assignments
              of its Patients' Health Benefits................................ 5

        B.    Aetna Electronically Processed
              Plaintiff's Claims; the Explanations of
              Benefits Contain No Misrepresentations............... 6

        C.    Almost All of the Claims are ERISA,
              Self-funded, or Both ................................. 7

V.      ARGUMENT AND AUTHORITIES ............................................ 9

        A.    The TPPA Does not Apply to Non-
              Contracted Providers Like Experience
              Infusion ...................................................... 9

        B.    The TPPA Does not Apply to the Claims
              Paid by Self-Funded Plans in Ex. A ...................... 12

        C.    The TPPA is Preempted by ERISA as
              Applied to all the ERISA Claims in Ex. A............. 13

        D.    Sworn Account is not a Viable Claim.................... 16

        E.    Without a Misrepresentation, Claims of
              Fraud and Negligent Misrepresentation
              Fail ......................................................... 19

VI.   CONCLUSION.................................................................... 21

## APPENDIX

**Exhibit**   **Description**

**A**           Affidavit of Karen Chotiner

   1-A        Self-Funded

   1-B        ERISA Self-Funded

   1-C        Non-ERISA Self-Funded

   1-D        Fully Insured

   1-E        ERISA Fully Insured

   1-F        Non-ERISA Fully Insured

**B**           Affidavit of Karen Chotiner

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. H & H Meat Prods. Inc.*,
    41 S.W.3d 762 (Tex. App.—Corpus Christi 2001,
    no pet.) .................................................................................17

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) ......................................................16, 17

*Aetna Life Ins. Co. v. Methodist Hosps. of Dallas*,
    640 F. App'x 314 (5th Cir. 2016) ..........................................13

*Am.'s Health Ins. Plans v. Hudgens*,
    742 F.3d 1319 (11th Cir. 2014).......................................3, 15

*Bank of La. v. Aetna U.S. Healthcare Inc.*,
    468 F.3d 237 (5th Cir. 2006)..................................................14

*Christus Health Gulf Coast v. Aetna, Inc.*,
    397 S.W.3d 651 (Tex. 2013)..............................................3, 9

*Cicio v. Does*,
    321 F.3d 83 (2d Cir. 2003) ....................................................15

*Ellis v. Liberty Life Assur. Co.*,
    394 F.3d 262 (5th Cir. 2004)..................................................15

*Health Care Serv. Corp. v. Methodist Hosps. of
    Dallas*,
    814 F.3d 242 (5th Cir. 2016).......................................3, 13, 14

*Hotz v. Blue Cross & Blue Shield of Mass., Inc.*,
    292 F.3d 57 (1st Cir. 2002) ....................................................15

*Houston Methodist Hosp. v. Humana Ins. Co.*,
    No. H-16-1469, 2017 WL 3037416 (S.D. Tex. July
    17, 2017) (Lake, J.) ..................................................................3

*Kanne v. Conn. Gen. Life Ins. Co.,*
    867 F.2d 489 (9th Cir. 1988) (per curiam) ...........................15

*Mahmoud v. De Moss Owners Ass'n, Inc.,*
    865 F.3d 322 (5th Cir. 2017)................................................20

*N. Cypress Med. Ctr. Operating Co. v. CIGNA*
    *Healthcare,*
    781 F.3d 182 (5th Cir. 2015)............................................3, 15

*Pilot Life Ins. Co. v. Dedeaux,*
    481 U.S. 41 (1987) ..............................................................14

*Rio Grande Royalty Co. v. Energy Transfer*
    *Partners, L.P.,*
    620 F.3d 465 (5th Cir. 2010)................................................20

*Sanders v. Total Heat & Air, Inc.,*
    248 S.W.3d 907 (Tex. App.—Dallas 2008, no pet.) ..............18

*Schoedinger v. United Healthcare of the Midwest,*
    *Inc.,*
    557 F.3d 872 (8th Cir. 2009)............................................4, 15

*Transitional Hosps. Corp. v. Blue Cross & Blue*
    *Shield of Tex., Inc.,*
    164 F.3d 952 (5th Cir. 1999)................................................19

*Wright v. Christian & Smith,*
    950 S.W.2d 411 (Tex. App.—Houston [1st Dist.]
    1997, no writ)......................................................................17

**Statutes**

ERISA § 502(a).........................................................................16

ERISA § 514(a)..................................................................14, 15

Tex. Ins. Code Ann. § 843.338 .............................................9, 10

Tex. Ins. Code Ann. § 1301.103 ...............................................10

Tex. Ins. Code Ann. § 843.351 .................................................11

Tex. Ins. Code Ann. § 1301.069 ...............................................11

Tex. Ins. Code Ann. § 1301.0041 .............................................13

Tex. Ins. Code § 843.336–.344 ....................................................9

**Other Authorities**

76th Leg., R.S., ch. 1343, § 1, 1999 Tex. Gen. Laws
    4556, 4556–57 ........................................................................9

77th Leg., R.S., ch. 1419, § 1, 2001 Tex. Gen. Laws
    3658, 3658, 3793–95 ..............................................................9

# I.   NATURE AND STAGE OF PROCEEDING

Plaintiff initially filed this lawsuit in state court seeking benefits under a single ERISA plan as an out-of-network infusion services provider. The Plaintiff is now on its second set of lawyers and its fourth pleading. Aetna Life Insurance Company ("Aetna") removed this lawsuit to this Court at the beginning of 2017. The pleading deadline has been extended multiple times and has now expired. [1]

Most recently, Plaintiff was ordered to identify the ERISA claims at issue and failed to do so. More specifically, Plaintiff now alleges both that "none of the health insurance benefits were provided to [the] patients [at issue] as a part of any ERISA-based health plan" and that "[t]he ERISA claims

---

[1] After filing two pleadings in state court, DKT#1-2 and DKT#1-5, Plaintiff was ordered by this Court to amend its pleadings again to remove an improper party. DKT#15. Plaintiff's May 5th pleading removed the improper party but increased the number of patients at issue from 1 to 252, expanded the number of medical claims at issue from 33 (for a single ERISA member) to 3,152 (according to Plaintiff), increased its alleged damages by nearly $17.8 million, raised a new theory of recovery not previously plead, and asserted certain medical claims on behalf of Precise Home Health, Inc., an entity Plaintiff has not alleged or proven is a related legal entity. DKT#17. The Court set October 6th as Plaintiff's most recent pleadings deadline. *See* DKT#22 and DKT#24.

consists of only about 42 claims out of 3,152."[2] Both statements are wrong. There are 745 encounters involving 10 patients who received their medical benefits from 9 fully insured health benefit plans governed by ERISA.[3] There are another 4,992 encounters involving 52 patients who received their medical benefits from 36 self-funded health benefit plans governed by ERISA. [4]

Aetna now files this motion for summary judgment because Plaintiff's claims for violations of the Texas Prompt Pay Act ("TPPA"), suit on sworn account, fraud, and negligent misrepresentation cannot survive as a matter of law.

## II.  ISSUES

Does Plaintiff have any claim for prompt pay violations?

- Does the TPPA apply to a non-contracted provider whose services are commonly available in Aetna's network?

- Does the TPPA apply to the 6,175 claims that are self-funded rather than insured?

---

[2] Compare DKT#24 at 9, ¶ 18 &  3, ¶ 6.

[3] Ex. A (Affidavit of Karen Chotiner) at ¶ 16.

[4] Ex. A (Affidavit of Karen Chotiner) at ¶ 13.

- Is the TPPA preempted as applied to the 5,737 claims related to benefits paid under the terms of ERISA plans?

Does Plaintiff have a "sworn account" claim given that it had no direct account relationship with Aetna?

Does Plaintiff have a claim for negligent misrepresentation or fraud for electronically adjudicated claims where there is no evidence of any false statement?

### III.   SUMMARY

Aetna's responsibilities (if any) under the Texas Prompt Pay Act are controlled by three well-established rules of law:

- First, there is no prompt pay liability to a non-participating provider like Experience Infusion. *See Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 656 (Tex. 2013).[5]

- Second, the TPPA has no application whatsoever to the vast majority of the claims here, which were paid by self-funded health plans. *See Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 253 (5th Cir. 2016).[6]

- And third, ERISA preempts the TPPA as applied to any ERISA plan. *See Houston Methodist Hosp. v. Humana Ins. Co.*, No. H-16-1469, 2017 WL 3037416, at *17 (S.D. Tex. July 17, 2017) (Lake, J.).[7]

---

[5] *See infra* § V.A.

[6] *See infra* § V.B.

[7] *See also infra* at § V.C (discussing *Health Care Serv. Corp.*, 814 F.3d at 253; *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 781 F.3d 182, 198-201 (5th Cir. 2015); *Am.'s Health Ins. Plans v.*

After prompt pay liability disappears, there is nothing of substance left in terms of amount or numbers of claims or viable legal theories. Plaintiff attempts to sue on a sworn account where there is no direct "account" relationship.[8] And Plaintiff finally complains of misrepresentations without either saying (in any of its four pleadings) what the misrepresentation was or even how it was possible given that the Plaintiff submitted its claims electronically and received an electronic adjudication in return.[9]

In short, Plaintiff has taken multiple opportunities to attempt to fit its facts into a legal theory that the law recognizes, and each time has failed. Aetna is therefore entitled to summary judgment.

---

*Hudgens*, 742 F.3d 1319, 1331-33 (11th Cir. 2014); *Schoedinger v. United Healthcare of the Midwest, Inc.*, 557 F.3d 872, 875 (8th Cir. 2009)).

[8] *See infra* § V.D.

[9] *See infra* § V.E.

# IV.   Factual Background

## A.   Experience Infusion is an Out-of-Network Provider Holding Assignments of its Patients' Health Benefits

Plaintiff Experience Infusion has no contract with Aetna; it is an out-of-network provider. [10] Specifically, Experience Infusion is an out-of-network provider who provides a therapy that is widely available in Aetna's network: infusion services.[11]

Taking the Plaintiff's Complaint at face value, Plaintiff's connection with Aetna is limited to providing treatment to Aetna members, taking an assignment of those members' benefits, and submitting the bill to Aetna. [12] The Plaintiff contends that its bills were not fully paid and it seeks recovery under the Texas Prompt Pay Act,[13] sworn account,[14] fraud,[15]

---

[10] DKT#24 ("Plaintiff's First Original Complaint" (sic)) at 1-2, ¶ 1; 10, ¶ 21.

[11] DKT#24 ("Plaintiff's First Original Complaint" (sic)) at 1-2, ¶ 1; Ex. B (Affidavit of Karen Chotiner) at ¶¶ 4-6.

[12] DKT#24 ("Plaintiff's First Original Complaint" (sic)) at 1-3, ¶¶ 1, 7.

[13] DKT#24 at 13-16, ¶¶ 26-29.

[14] DKT#24 at 16-17, ¶ 30.

[15] DKT#24 at 17, ¶ 31.

and negligent misrepresentation.[16] No claim for breach of the health plans is alleged under either state or federal law.

## B.   Aetna Electronically Processed Plaintiff's Claims;   the Explanations of Benefits Contain No Misrepresentations

This is not the type of case where a medical provider calls to confirm eligibility and receives incorrect information. Rather, according to the Plaintiff, its claims were adjudicated electronically.[17]

Indeed, a large majority of medical claims processed by Aetna are done so electronically.[18]  An electronic medical claim from a provider is submitted with certain information in support of that claim (member name, diagnosis codes, billed amounts, etc.).[19] When Aetna receives the electronic medical

---

[16] DKT#24 at 17-18, ¶ 32. The Plaintiff also alleges several matters that are not recognized theories of recovery at all or are only remedies dependent upon the success of an underlying cause of action. DKT#24 at 18-21.

[17] DKT#24 at 11, ¶ 21.

[18] Ex. A (Affidavit of Karen Chotiner) at ¶ 5.

[19] Ex. A (Affidavit of Karen Chotiner) at ¶ 4.

claim, an electronic claims adjudication system is used to process the claim and determine payment amount (if any).[20]

Once the claim is electronically adjudicated, Aetna issues an Electronic Remittance Advice ("ERA") or Explanation of Benefits ("EOB") which explains how payment was determined and the amount of payment being transmitted.[21] According to Plaintiff's own Complaint, this was the process applied to each of the medical claims at issue. There is no allegation that the EOB received by the Plaintiff failed to accurately communicate Aetna's actual benefit determination.

### C.      Almost All of the Claims are ERISA, Self-funded, or Both

Plaintiff also alleges that Aetna was an insurer with regard to these claims,[22] and that only 42 of the claims at issue are ERISA claims.[23] Neither allegation is remotely true.[24]

---

[20] Ex. A (Affidavit of Karen Chotiner) at ¶ 5.

[21] Ex. A (Affidavit of Karen Chotiner) at ¶ 6.

[22] DKT#24 at 5-6, ¶ 12.

[23] DKT#24 at 3, ¶ 6.

[24] Exhibit A and its attachments contain a list of the medical claims at issue, including patients' protected health information. As such, the exhibit and attachment are being filed under seal. Aetna will separately serve a copy of this exhibit and attachment in excel format on Plaintiff along with its motion.

**Self-Funded:** For the Medical Claims Aetna was able to match, there are 6,175 encounters with 77 patients in which Aetna was not an "insurer" because those members, received their medical benefits from 43 self-funded health benefit plans.[25] Of these, 4,992 encounters involve 52 patients who received their medical benefits from 36 self-funded health benefit plans governed by ERISA and 1,183 encounters involve 25 patients who received their medical benefits from 7 self-funded health benefit plans exempt from ERISA.[26]

**ERISA:** There are 745 encounters involving 10 patients who received their medical benefits from 9 fully insured health benefit plans governed by ERISA.[27] And again, 4,992 encounters involve 52 patients who received their medical benefits from 36 self-funded health benefit plans governed by ERISA.[28]

---

[25] Ex. A (Affidavit of Karen Chotiner) at ¶ 12.

[26] Ex. A (Affidavit of Karen Chotiner) at ¶¶ 13-14.

[27] Ex. A (Affidavit of Karen Chotiner) at ¶ 16.

[28] Ex. A (Affidavit of Karen Chotiner) at ¶ 13.

**Insured, Non-ERISA:** There are only 5 patients (1,253 encounters) who received their medical benefits from 5 fully insured health benefit plans exempt from ERISA.[29]

### V. ARGUMENT AND AUTHORITIES

**A.    The TPPA Does not Apply to Non-Contracted Providers Like Experience Infusion**

The Supreme Court of Texas has squarely held that the Prompt Pay Statute (predecessor to the current Act) "requires contractual privity" before the payment deadlines apply. *Christus Health Gulf Coast*, 397 S.W.3d at 653. The court's construction turns on the legislature's requirement that an HMO pay '*in accordance with the contract between the physician or provider and the health maintenance organization* . . . .'" *Id.* at 654 (emphasis in original).[30]

The Legislature kept that same language when it recodified the Statute as the Texas Prompt Pay Act. *See* Tex. Ins. Code Ann. §§ 843.338(1) (West 2009 & Supp. 2016) &

---

[29] Ex. A (Affidavit of Karen Chotiner) at ¶ 17.

[30] Quoting Act of May 29, 1999, 76th Leg., R.S., ch. 1343, § 1, 1999 Tex. Gen. Laws 4556, 4556–57, *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 1, 2001 Tex. Gen. Laws 3658, 3658, 3793–95 (current version at Tex. Ins. Code § 843.336–.344).

1301.103(1) (West 2009 & Supp. 2016). Indeed, a deadline for claims processing only runs when the HMO or insurer receives a clean claim from a provider with whom it **contracted**, which is to say either "a participating physician or provider" or a "preferred provider." *See* Tex. Ins. Code Ann. §§ 843.338 & 1301.103.

Thus, both the old Statute and the new TPPA contain a general requirement of contractual privity. But Experience Infusion has no contract with Aetna. On the contrary, Plaintiff admits that it "was an out of network provider, meaning that Plaintiff did not have a written provider contract with Defendants . . . ."[31] Thus, absent some statutory exception, all of Plaintiffs' prompt pay claims fail as a matter of law.

Experience Infusion attempts to rely upon an exception codified into the TPPA for care made at the request of the insurer, HMO, or network provider because the services were "not reasonably available" in the network from a contracted

---

[31] DKT#24 at 10, ¶ 21.

provider. Tex. Ins. Code Ann. §§ 843.351(2)(B) & 1301.069(2)(B).[32] But that exception has no application here.

Experience Infusion does not provide some exotic, hard-to-find type of health care; it is "an infusion care center."[33] Aetna has over 500 such providers contracted to provide the same services as Experience Infusion to the same patients Experience Infusion treated.[34] Thus, the services are not only "reasonably available" in Aetna's network, they are **_widely_** available.

Because Plaintiff has no contract with Aetna and Experience Infusion cannot prove an exception, all of Plaintiff's TPPA claims fail.[35]

---

[32] _See_ DKT#24 at 10, ¶ 20.

[33] DKT#24 at 4, ¶ 9.

[34] _See_ Ex. B (Affidavit of Karen Chotiner) at ¶ 4.

[35] Granting judgment on this basis leaves only state law claims for fraud, negligent misrepresentation, and sworn account. But those are preempted and fail on the merits under state law as well. _See infra_ §§ V. C., D., and E.

– 11 –

**B.      The TPPA Does not Apply to the Claims Paid by Self-Funded Plans in Ex. A**

Plaintiff pleads that Aetna is an "insurer" as that term is defined in the Texas Insurance Code.[36] But Plaintiff's allegation is simply untrue with regard to a large majority of the claims at issue here.

The claims identified on Exhibit 1-A to Exhibit A involve 6,175 encounters with 77 patients who received their medical benefits from 43 health plans that are "self-funded."[37] These include both ERISA and non-ERISA plans for which Aetna simply provides administrative services in exchange for a fee.[38] The TPPA has no application to such plans because there is no "insurer" and no "health insurance policy," both of which are required by the statute.

By its terms, Chapter 1301 applies to a "preferred provider benefit plan in which ***an insurer*** provides, through the ***insurer's health insurance policy***, for the payment of a

---

[36] DKT#24 at 5-6. ¶ 12.

[37] Ex. A (Affidavit of Karen Chotiner) at ¶ 12.

[38] Ex. A (Affidavit of Karen Chotiner) at ¶ 11.

– 12 –

level of coverage . . . ." Tex. Ins. Code Ann. § 1301.0041(a) (West 2009 & Supp. 2016) (emphasis added). Giving this language a "plain reading," the Fifth Circuit has squarely held that Chapter 1301 "is inapplicable to [an administrator] when it administers self-funded plans." *Health Care Serv. Corp.*, 814 F.3d at 253; *see also Aetna Life Ins. Co. v. Methodist Hosps. of Dallas*, 640 F. App'x 314, 318 (5th Cir. 2016) (applying the holding in *Health Care Services* directly to Aetna).

Experience Infusion thus has no prompt pay claim for the claims identified in Ex. A, which arise from the administration of a self-funded plan.[39]

### C.   The TPPA is Preempted by ERISA as Applied to all the ERISA Claims in Ex. A

The claims identified on Exhibit A involve 5,737 encounters with 62 patients who received their medical benefits from 45 ERISA plans.[40] Another judge of this same court has correctly held that ERISA preempts the TPPA as

---

[39] Granting judgment on this basis leaves potential prompt pay penalties for insured plans, both ERISA and non-ERISA plans. But all the claims arising from ERISA plans, both insured and self-funded, are preempted by ERISA. *See infra* § V.C.

[40] *See* Ex. A (Affidavit of Karen Chotiner) at ¶¶ 13 and 16.

– 13 –

applied to such claims. *See Houston Methodist Hosp.*, No. H-16-1469, 2017 WL 3037416, at \*17 (preempting TPPA as applied to insured ERISA plans).

Judge Lake came to this conclusion in part because the Fifth Circuit has already ruled that the Federal Employees Health Benefits Act ("FEHBA") preempts the TPPA and "[t]he Fifth Circuit's analysis of the TPPA . . . regarding FEHBA preemption applies with equal force to ERISA preemption . . . ." *Id.* at \*14 (citing and discussing *Health Care Serv. Corp.*, 814 F.3d at 253). Judge Lake was right.

Claims processing is ERISA's ***central concern***. Thus, ERISA § 514(a) preempts state-law remedies for "improper ***processing*** of a claim for benefits"--including claims based on delayed payments. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987) (emphasis added). Simply stated, claims alleging delayed processing and payment "require inquiry into an area of exclusive federal concern." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006).

Consistent with this, the Fifth Circuit has twice held that claims under state statutes enforcing payment deadlines are preempted on that basis. *See N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 198-201 (healthcare provider's claims against insurer under prompt-pay deadlines for HMOs); *Ellis v. Liberty Life Assur. Co.*, 394 F.3d 262, 274-78 & n.53 (5th Cir. 2004) (insured's claims against insurer under statutory deadlines for paying insureds). Indeed, every circuit to address the issue has held that ERISA § 514(a) preempts prompt-pay claims based on an alleged failure to timely determine and pay ERISA claims.[41]

---

[41] *See Hudgens,* 742 F.3d at 1331-33 (Georgia's prompt-pay statute, which "require[d] self-funded ERISA plans to process and pay provider claims, or notify claimants of claim denials, within fifteen or thirty days")*; Schoedinger*, 557 F.3d at 875 (healthcare providers' claims against administrator of self-funded plans under Missouri's prompt-pay law, which imposed statutory and interest penalties if a "health carrier" "'fail[ed] to pay, deny or suspend' a claim within forty days")*; Cicio v. Does*, 321 F.3d 83, 95 (2d Cir. 2003) (insured's claim against an HMO under New York law that required ERISA plans to reply within 24 hours to requests for certain treatments). Other circuits have similarly ruled that Section 514(a) preempts state-law claims for untimely claim processing. *See*, *e.g.*, *Hotz v. Blue Cross & Blue Shield of Mass., Inc.*, 292 F.3d 57, 58 (1st Cir. 2002) (claim that "delay" in "approving payment" for treatment "caused [patient's] condition to worsen"); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 491 (9th Cir. 1988) (per curiam) (claims for "emotional distress" caused by "delay in payments" for medical bills).

There can be no doubt about the outcome here. Plaintiff contends that money is due from the plan itself[42] and should be paid to Plaintiff in its status as an assignee of any benefits due to the patient.[43] The exclusive remedy for such a complaint is ERISA § 502(a). *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy. . . is therefore pre-empted." *Id.*

Thus, all the claims identified in Exhibit A which are governed by ERISA fail on the grounds of ERISA preemption.[44]

### D.   Sworn Account is not a Viable Claim

A sworn account claim complaining of improper claims processing would be preempted for the same reasons as the TPPA claims are preempted. Experience Infusion cannot

---

[42] DKT#24 at 3, ¶ 8 ("Monies owed Plaintiff on behalf of services provided were not paid although payments for said services were provided to the Defendant from her plan.").

[43] DKT#24 at 3, ¶ 7 ("Plaintiff was assigned benefits as a provider.").

[44] Granting judgment on the basis of ERISA preemption and the exclusion of self-funded claims (§§ B & C) leaves potential prompt pay liability for only insured plans that are exempted from ERISA (e.g., governmental plans, church plans). Those claims are identified in Ex. A ¶ 17.

"duplicate[], supplement[], or supplant[]" ERISA's civil enforcement mechanism. *Davila*, 542 U.S. at 209. But such a claim fails on the merits under state law as well.

A central requirement of a sworn account claim is an **account** with the defendant itself, that is, an agreement by the defendant to pay for services rendered. *See Wright v. Christian & Smith*, 950 S.W.2d 411, 413 (Tex. App.—Houston [1st Dist.] 1997, no writ). Indeed, an account is created when "(1) [] there was a sale and delivery of merchandise or performance of services; (2) [] the amount of the account is just, that is, that the **prices were charged in accordance with an agreement** or were customary and reasonable prices; and (3) [] the amount is unpaid. *Adams v. H & H Meat Prods. Inc.*, 41 S.W.3d 762, 773 (Tex. App.—Corpus Christi 2001, no pet.).

Plaintiff's sworn account claim fails because there is no account or agreement for payment for any services rendered and no services of any kind rendered for Aetna. Again, Plaintiff specifically admits that it "was an out of network provider, meaning that Plaintiff did not have a written provider contract

with Defendants . . . ."[45] As for services rendered, Plaintiff further states that it "provided infusion care services to patients,"[46] **not** to Aetna.

At most, Plaintiff is a non-contracted provider who has been assigned benefits to its patients' health plans. But contracting with some third party, even one in privity with the defendant, will not suffice. *See Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 914 (Tex. App.—Dallas 2008, no pet.) (sworn account against homeowner by subcontractor who contracted with building contractor fails).

As an assignee of benefits due, if at all, under a plan, Plaintiff is only owed payment once it is determined that the services provided are eligible for reimbursement according to the terms of the plan. There is no guarantee of payment. As such, Plaintiff cannot show it is owed money pursuant to any open account and this cause of action, for all of the claims identified in Exhibit A, must fail as a matter of law.

---

[45] DKT#24 at 10, ¶ 21.

[46] DKT#24 at 10, ¶ 21.

**E.    Without a Misrepresentation, Claims of Fraud and Negligent Misrepresentation Fail**

Assuming the Court grants summary judgment on all of the above grounds, only Plaintiff's fraud and negligent misrepresentation claims remain. Claims for fraud and negligent misrepresentation complaining of improper claims processing would also be preempted for the same reasons as the TPPA claims are preempted. "[W]hen a [provider] seeks to recover benefits owed under the plan to a plan participant who has assigned her right to benefits to the [provider]" the asserted state law claims are preempted. *Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Tex., Inc.*, 164 F.3d 952, 954 (5th Cir. 1999).

But the plain fact of the matter was there was no misrepresentation because the EOBs Aetna sent were true; they accurately reflected the basis and grounds of the benefit determinations at issue. As such, Plaintiff's claims for fraud and negligent misrepresentation fail on the merits under state law as well.

To prove a claim for fraud under Texas law, a Plaintiff must show a ***misrepresentation***. *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). Likewise, to prove negligent misrepresentation a Plaintiff must show a defendant ***made a representation*** that supplied ***false information***. *Mahmoud v. De Moss Owners Ass'n, Inc.*, 865 F.3d 322, 329 (5th Cir. 2017). Here, both claims fail because there was no misrepresentation as a matter of law.

Plaintiff has only plead that it electronically filed its claims and that they were processed by Aetna. Following such an electronic adjudication of a claim, Aetna issues an ERA or EOB advising the provider how each claim was paid.[47] The ERAs and EOBs do nothing more than communicate a process and amount of actual payment. As such, with a purely electronic claims process, and no allegations to the contrary, Plaintiff ***cannot*** show any misrepresentations were made. Without any such misrepresentation, Plaintiff cannot recover

---

[47] Ex. A (Affidavit of Karen Chotiner) at ¶ 6.

on its fraud and negligent misrepresentation claims as a matter of law.

## VI. CONCLUSION

Plaintiff can recover on none of the asserted medical claims under the Texas Prompt Pay Act because Plaintiff is an out-of-network provider. A subset of claims further fail under this cause of action because the TPPA has no application to self-funded plans and ERISA preempts the TPPA as applied to any ERISA plan. ERISA likewise preempts Plaintiff's claim for suit on sworn account, fraud, and negligent misrepresentation. But those causes of action further fail on the merits. The Court should thus enter summary judgment dismissing all of Plaintiff's claims against Aetna.

Respectfully submitted,

OF COUNSEL:

Andrews Kurth Kenyon LLP
   and
Dimitri Zgourides
State Bar No. 00785309
SDOT No. 16513
dzgourides@andrewskurth.com
Mitchell A. Reid
State Bar No. 24037346
SDOT No. 34728
mreid@andrewskurth.com
600 Travis, Suite 4200
Houston, Texas 77002
Telephone:  (713) 220-4200
Telecopier:  (713) 220-4285

By: */s/ Mitchell A. Reid*
   John B. Shely
   State Bar No. 18215300
   SDOT No. 7544
   600 Travis, Suite 4200
   Houston, Texas 77002
   Telephone:  (713) 220-4200
   Telecopier:  (713) 220-4285
   jshely@andrewskurth.com

ATTORNEY-IN-CHARGE
FOR DEFENDANT AETNA
LIFE INSURANCE
COMPANY

– 22 –

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2017, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who is a known "Filing User", as follows:

> Diogu Kalu Diogu II, LLM
> P.O. Box 994
> Fulshear, Texas 77441
> Diogu.diogu.law.firm@gmail.com

> > */s/ Mitchell A. Reid*
> > Mitchell A. Reid