**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **EXPERIENCE INFUSION CENTER, LLC** | § | |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:17-cv-00034** |
| | § | |
| **TEXAS HEALTH + AETNA INSURANCE** | § | |
| **HOLDING COMPANY, LLC & AETNA.** | § | |
| **LIFE INSURANCE COMPANY** | § | |
| **Defendants** | § | |

**PLAINTIFF EXPERIENCE INFUSION CENTERS, LLC'S THIRD AMENDED**
**COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, EXPERIENCE INFUSION CENTERS, LLC, (herein after referred to as "EIC"), files this Third Amended Complaint against Defendant, AETNA LIFE INSURANCE COMPANY, (herein after referred to as "Aetna"), and alleges as follows:

## PARTIES

1.      Plaintiff Experience Infusion Centers, LLC is a company licensed to do business in Texas.

2.      Defendant Aetna Life Insurance Company is an insurance company licensed to do business in Texas. Defendant has filed an Answer in this case and may be served through its counsel of record.

## VENUE AND JURISDICTION

3.      This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1001 et seq., Employment Retirement Income Security Act ("ERISA"), as some of EIC's claims arise under ERISA.

4.      Alternatively, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, law or treaties of the United States.

6.      Venue is proper in the Southern District of Texas pursuant to 29 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this district.

## INTRODUCTION

7.      This is a dispute between EIC and Aetna. Aetna functions as both a health insurance company and as a third-party administrator for self-funded, employee benefit plans.  Many of the Aetna administered, self-funded, employer-sponsored benefit plans are governed by ERISA, but some are not (such as benefit plans sponsored by religious organizations, which are not governed by ERISA).  Additionally, some of the fully-insured plans are governed by ERISA, but some are not (such as private health insurance policies purchased on the exchange, which are not governed by ERISA).

8.      EIC is an out-of-network medical provider that focuses most of its work on providing IV antibiotic infusion services.  Most of EIC's patients are treated by Dr. Salvato, who is an Aetna in-network physician, specializing in treating Lyme disease.

9.      The gravamen of this Complaint arises out of Aetna's unconscionable practice of paying legitimate claims submitted by EIC, only to unilaterally recoup those payments later. These recoupments were made without regard to any governing principles and without any valid justifications.  In every case, the initial payments made by Aetna to EIC were proper, and there was no valid justification for recouping at all.  Even worse, Aetna recouped against patient claims

2

that had nothing to do with the supposed overpayments.  Rather, Aetna's recoupments were made against legitimate claims for services rendered to unrelated patients, who had different Aetna insurance/benefit plans, with different employer sponsors, during different years. EIC now seeks to recover those recoupments and is using a number of legal theories to do so.  First, EIC seeks to enforce the terms of various ERISA plans under 29 U.S.C. § 1132(a)(1)(B).  EIC also seeks penalties and damages under ERISA for breach of fiduciary duty and for failing to provide information as required by ERISA.  As to the non-ERISA plans and policies, EIC seeks damages for breach of contract (EIC has an assignment for all its patients) as well as for Texas Prompt Pay Act violations.    Finally, EIC seeks reliance damages for Aetna's fraud and negligent misrepresentation arising out of its false representations that EIC's claims were payable, when in fact, Aetna intended to recoup from the start.

## FACTUAL ALLEGATIONS

10.     EIC brings this action pursuant to healthcare plans directly insured and/or administered by Aetna. The plans at issue permit subscribers to obtain healthcare services from facilities such as EIC that have not entered into contracts with Aetna (referred to as "out-of-network," "non-participating" or "non-par" providers). Aetna is required under the terms of its healthcare contracts to pay benefits promptly for such out-of-network services based on the particular Aetna plan and/or policy.

11.     Except for the ERISA exempt self-funded benefit plans and the non-ERISA fully-insured plans, both of which are described below, the healthcare benefit plans at issue in this case are governed by the applicable provisions of ERISA, 29 U.S.C. § 1001 et seq. These ERISA benefit/insurance plans are interpreted by the plan administrators.  The employee-members pay a part of the cost of the insurance. For each plan alleged herein, the employee member is entitled to

certain benefits, which includes the right to go to out-of-network providers such as EIC for treatment of an illness and to obtain reimbursement for such treatment.

12.     EIC requires all Aetna beneficiaries, members and subscribers to sign documents before infusion services begin whereby the employee-member or subscriber agrees to be personally responsible for all EIC's charges. Through these documents, EIC obtains an assignment of benefits that makes EIC the beneficiary of the ERISA plans and the non-ERISA insurance contracts. EIC does not waive a deductible or co-payment by the acceptance of the assignment. Because of this assignment of benefits, EIC has standing to sue Aetna under all insured contracts for plan benefits and under ERISA.

13.     In addition to an assignment of benefits under Aetna's plan or insurance contracts, the documents signed by each EIC patient also includes an assignment of all legal or administrative claims and causes of action arising under any group health plan, employee benefits plan, or health insurance plan.  This assignment transfers and conveys all rights to pursue extra-contractual claims that relate to the medical services provided.  Each assignment signed by EIC's patients specifically includes an assignment of ERISA breach of fiduciary duty claims as well as all other legal and/or administrative claims connected to the healthcare rendered by EIC to the patient regardless of whether the claim sounds in tort or in a statutory violation.  Thus, this assignment gives EIC standing to sue Aetna for ERISA violations and for other extra-contractual causes of action governed by Texas law that originally belonged to the Aetna beneficiaries/members/subscribers who are or were patients of EIC.

14.     Between 2011 and 2015, EIC sent millions of dollars in bills to Aetna for infusion services provided to patients covered by Aetna plans and policies. Aetna did not have an in-network facility that was reasonably accessible to the patients who received infusion services from EIC. Many of

4

EIC's infusion patients brought their Aetna plan documents to the EIC facility, which were carefully studied by Jim Rutherford and other EIC personnel.  These plan booklets listed Aetna's in-network providers, and none of the Aetna plans reviewed by EIC identified any in-network provider who would provide outpatient infusion services. In addition, Dr. Salvato, who is an Aetna in-network physician, called Aetna several times over the years and asked if there were any in-network infusion centers to which she could send her patients, and she was repeatedly and consistently told by Aetna representatives that there were no such in-network providers.

15.     In situations where Aetna does not directly insure group health plans, it functions as the third party "plan administrator" as that term is defined under ERISA, and thus assumes all obligations imposed by ERISA on such plan administrators.

16.     Aetna also functions as a fiduciary for self-funded health plans and has fiduciary duties under ERISA. In this role, Aetna exercises discretionary control in its interactions with self-funded health plans and their subscribers, pursuant to rights granted by the plan sponsor.

17.     Aetna also entered into administrative service only (ASO) Agreements, pursuant to which Aetna administers those plan sponsors' self-funded health benefit plans.   Under the ASO agreements, plan sponsors delegate responsibilities and authority over self-funded plans to Aetna. These responsibilities include determining eligibility and enrollment for coverage under the plan according to the information provided by the employer, making factual determinations to interpret the provisions of the plan to make coverage determinations on claims for plan benefits, conducting a full and fair review of each claim which has been denied, and conducting both mandatory levels of appeal determinations for all concurrent, pre-service and post-service claims and notifying the member or the member's authorized representatives of its decision. Most of these obligations are required of the plan administrator by the applicable provisions of ERISA.

18.     The foregoing contractual provisions, as well as EIC's dealings with Aetna as described herein, demonstrate that Aetna exercises discretionary authority and/or discretionary control over the self-funded health benefit plans that Aetna administers, and the assets of the self-funded health benefit plans that Aetna administers (both of which the plan sponsors, with whom Aetna contracts, have unequivocally yielded to Aetna).

## AETNA'S SCHEME

19.     From 2011 to the present, EIC rendered infusion services to Aetna patients as an out-of-network provider.  In almost every case, the patient was prescribed IV antibiotic therapy from Dr. Salvato, who is an Aetna in-network physician.  In many cases, either Dr. Salvato or EIC obtained pre-authorization from Aetna to perform the infusion services.  These patients are identified and classified by member ID number, plan sponsor and dates of service in a confidential affidavit signed by Karen Chotiner, who works for Aetna, which affidavit is being filed under seal and is fully incorporated herein as Exhibit "1" to this Complaint.[1] Attached to Ms. Chotiner's Affidavit are Exhibits 1-A through 1-F as explained more fully below:

- Exhibit 1-A identifies the 77 patients by medical ID number (6,175 separate encounters with EIC) who received medical benefits pursuant to the terms of 43 self-funded health benefits plans.  These plans are governed by ERISA (See Exhibit "1" at para. 12).

- Exhibit 1-B identifies the 52 patients by medical ID number (4,992 separate encounters with EIC) who received medical benefits pursuant to the terms of 36 self-funded health benefits plans that are also governed by ERISA (See Exhibit "1" at para. 13).

- Exhibit 1-C identifies the 25 patients by medical ID number (6,175 separate encounters with EIC) who received medical benefits pursuant to the terms of 7 self-funded health benefits plans that are exempt from ERISA.  For example, plans sponsored by religious organizations are not governed by ERISA (See Exhibit "1" at para. 14).  As these plans are not subject to ERISA, they are governed by Texas law including traditional contract law and the Texas Prompt Pay Act.

---

[1] This is the same affidavit as Exhibit "1" attached to Defendant's Motion for Summary Judgment (Doc 29). The charts to the affidavit also identify the funding source for the benefit plan and Aetna's funding arrangement code for each of these plans.

- Exhibit 1-D identifies the 15 patients by medical ID number (1,998 separate encounters with EIC) who received medical benefits pursuant to the terms of 14 fully-insured health benefit plans that are not governed by ERISA (See Exhibit "1" at para. 15). As these plans are not subject to ERISA, they are governed by Texas law including traditional contract law and the Texas Prompt Pay Act.

- Exhibit 1-E identifies the 10 patients by medical ID number (745 separate encounters with EIC) who received medical benefits pursuant to the terms of 9 fully-insured, employer-sponsored health benefit plans that are governed by ERISA  (See Exhibit "1" at para. 16).

- Exhibit 1-F identifies the 5 patients by medical ID number (1,253 separate encounters with EIC) who received medical benefits pursuant to the terms of 5 fully-insured health benefit plans that are exempt from ERISA  (See Exhibit "1" at para. 17). As these plans are not subject to ERISA, they are governed by Texas law including traditional contract law and the Texas Prompt Pay Act.

20.     All of the patients identified in Exhibits 1-A through 1-F were Aetna plan members/beneficiaries/insureds who were treated at EIC.  For all these encounters, EIC submitted bills to Aetna for services rendered.[2]  Simply stated, Exhibits 1-A through 1-F encompass the universe of all bills submitted by EIC to Aetna during the relevant time period.

21.     For each of the health benefit plans/insurance plans identified in 1-A through 1-F, Aetna had plan terms that explained the benefit to which the member/insured was entitled when medical services were provided by an out-of-network provider such as EIC.  For all the Aetna plans at issue in this case, the starting point of the reimbursement benefit analysis is the "usual and customary" charge or "reasonable amount" to be charged.  Each type of infusion service rendered by EIC has a standard billing code, and EIC bills pursuant to those codes.  Aetna uses information from FAIR Health, Inc., a not-for-profit company, that reports on how much providers charge for services in any zip code in order to determine the reasonable charge for any medical procedure or service rendered by an out-of-network provider.[3]  The amount actually billed by EIC for a particular service may or may not exceed the amount listed in FAIR Health's chart, and when it does exceed

---

[2] EIC did, in fact, render all the infusion services that were billed, and Aetna has never contended otherwise.
[3] Sometimes, Aetna would also use Medicare rates as a guide to determine reasonable and customary charges.

FAIR Health's listed price, Aetna considers the excess amount to be not payable under the terms of the plan or policy on grounds that the excess amount is not a reasonable charge.

22.     According to the terms of the plans at issue in this case, Aetna is obligated to pay a percentage of the reasonable and customary charge to out-of-network providers such as EIC. Usually, this percentage is either 60% or 100% of the reasonable and customary charge, although some of the insured plans only pay 50% of the reasonable and customary charge to out-of-network providers.[4] Thus, when EIC submitted the bills identified in Exhibits 1-A through 1-F, the terms of Aetna's plans/policies required Aetna to pay EIC the applicable percentage of the reasonable and customary charge that is identified in the patient's particular plan.

23.     For each of the bills submitted in Exhibit 1-A through 1-F, EIC first obtained the above described assignment from the patient before rendering the infusion services.  The document signed by the patients assigned to EIC the right to receive benefits under the patient's plan or policy and also assigned to EIC all causes of action related to the medical care that was to be rendered.  In most cases, either Dr. Salvato or EIC obtained pre-authorization for the infusion services to be rendered.  Once such pre-authorization was received, EIC rendered the services and then submitted a bill to Aetna.

24.     EIC is not challenging all the bills submitted to Aetna in this lawsuit.  Rather, EIC is only challenging the bills that were initially paid by Aetna and then subsequently recouped by Aetna against a different EIC patient.  Here is how Aetna's scheme worked.

---

[4] Most of the ERISA plans at issue in this case are Aetna Choice POS II plans.  Although they are sponsored by various employers, the Aetna Choice POS II plans typically have identical plan language, with the notable exception that some of the plans provide for a different percentage of the usual/reasonable charges.  For out-of-network providers, typically, the plans will either pay 60% or 100% of the usual/reasonable charge.

25.     When EIC billed Aetna, Aetna would reduce the bill to the reasonable and customary amount as explained above, and then would pay EIC what was owed pursuant the plan/policy terms.   Then, as EIC continued to treat new and different patients, EIC would bill Aetna for different patients who had different plan sponsors (i.e. different employers).   In response to these subsequent bills, Aetna would send an EOB to EIC that explained the amount that was payable pursuant to the terms of the new patients' plan/policies.   (For example, on a plan that pays 60% of reasonable and customary charges, Aetna would reduce the bill to the reasonable and customary amount, and then calculate the 60% that Aetna owed under the terms of the plan.)   However, Aetna would not pay most or all of the amount owed as explained on the EOB.   Rather, Aetna would offset the amount owed to EIC (in part or in full) on grounds that Aetna overpaid EIC on the first patient.   The recoupment EOB does not explain why Aetna believes that its payment on the first patient was improper.   Additionally, Aetna never explains how it can recoup against a different patient, who is part of a different employer-sponsored plan, months or years after the initial payment for the first patient was made.   When EIC complained and challenged Aetna about these recoupments, Aetna stonewalled EIC and did not stop the recoupments.   The process of improperly recouping continues to this day.

26.     The following are patient-specific examples of how the schemed worked:

**Example 1- Patient #4**

27.     Patient #26 received infusion services from EIC on July 3, 2012.   Patient #26 had a Self-Funded ERISA plan through Occidental Petroleum Corporation, which provided a benefit for care rendered by out-of-network providers.   EIC sent a bill to Aetna which resulted in Aetna paying EIC $6,133.00.

28.     Then, on October 22 and October 24, 2014, EIC provided infusion services to Patient #4.  Patient #4 had an ERISA Plan referenced as "Aetna Choice POS II" through her employment with The Bank of New York Mellon Corporation, which was the plan sponsor.  The plan provided for a benefit of 60% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $6,380.00 to Aetna for each date of service, and Aetna responded with an EOB on December 29, 2014.

29.     The EOB reduced each bill to $320.00 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $192.00 per visit totaling $384.00, which represents 60% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $384.00 owed.  Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on patient #26.  No explanation was given for why Aetna believed that the $6,133.00 paid on Patient #26 was improper.  The failure to pay was a breach of the terms of the plan for Patient #4 and was a breach of other duties imposed by law on Aetna.

**Example 2- Patient #23**

30.     Patient #27 received infusion services from EIC on July 24, 2013.  Patient #1 had a Self-Funded ERISA plan through SAP America, Inc., which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC $14,550.00.

31.     Then, on July 26, 2013, EIC provided infusion services to Patient #23.  Patient #23 had a Self-Funded ERISA plan referenced as "Aetna Choice POS II" through her employment with Anadarko Petroleum Corp., which was the plan sponsor.  The plan provided for a benefit of 60% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $15,180.00 to Aetna for these services, and Aetna responded with an EOB on May 27, 2014.

32.     The EOB reduced the bill to $5,712.98 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $3,427.79, which represents 60% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $3,427.79 owed.  Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on patient #27.  No explanation was given for why Aetna believed that the $14,550 paid on Patient #27 was improper.  The failure to pay was a breach of the terms of the plan for Patient #23 and was a breach of other duties imposed by law on Aetna.

**Example 3- Patient #1**

33.     Patient #23 received infusion services from EIC on July 10, 2013. Patient #23 had a Self-Funded ERISA plan through Anadarko Petroleum Corporation, which provided a benefit for care rendered by out-of-network providers. EIC sent a bill to Aetna which resulted in Aetna paying EIC for some of those bills.

34.     Then, on March 20, 2014, EIC provided infusion services to Patient #1. Patient #1 had a Self-Funded ERISA plan referenced as "Aetna Choice POS II" through his employment with DXP Enterprises, Inc., which was the plan sponsor. The plan provided for a benefit of 100% of the reasonable and customary charges to out-of-network providers. EIC sent a bill for $28,606.80 to Aetna for these services, and Aetna responded with an EOB on June 16, 2014.

35.     The EOB reduced the bill to $27,768.80 on various grounds. Then, the EOB calculated the amount owed by Aetna as $27,768.80, which represents 100% of the amounts allowed as calculated by Aetna. However, Aetna did not pay EIC the $27,768.80 that it owed. Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on patient #23. No explanation was given for why Aetna believed that the amount paid on Patient #23 was improper.

The failure to pay was a breach of the terms of the plan for Patient #1 and was a breach of other duties imposed by law on Aetna.

**Example 4- Patient #2**

36.     Patient #24 received infusion services from EIC on February 5, 2013. Patient #24 had a Self-Funded ERISA plan through BP Corporation North America, Inc., which provided a benefit for care rendered by out-of-network providers. EIC sent a bill to Aetna which resulted in Aetna paying EIC $6,370.00.

37.     Then, on April 8, 2013, EIC provided infusion services to Patient #2. Patient #2 had a Self-Funded ERISA plan referenced as "Aetna Choice POS II" through her employment with EXXONMOBIL, which was the plan sponsor. The plan provided for a benefit of 60% of the reasonable and customary charges to out-of-network providers. EIC sent a bill for $1,100.00 to Aetna for these services, and Aetna responded with an EOB on May 26, 2014.

38.     The EOB reduced the bill to $416.25 on various grounds. Then, the EOB calculated the amount owed by Aetna as $249.75, which represents 60% of the amounts allowed as calculated by Aetna. However, Aetna did not pay EIC the $249.75 that it owed. Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on patient #24. No explanation was given for why Aetna believed that the $6,370.00 was improper. The failure to pay was a breach of the terms of the plan for Patient #2 and was a breach of other duties imposed by law on Aetna.

**Example 5- Patient #3**

39.     Patient #25 received infusion services from EIC on February 23, 2013. Patient #25 had a Self-Funded ERISA Exempt plan through her employer, Harris County, which provided a benefit for care rendered by out-of-network providers. EIC sent a bill to Aetna which resulted in Aetna paying EIC $4,881.06.

40.     Patient #27 received infusion services from EIC on December 16, 2013. Patient #27 had a Self-Funded ERISA plan through SAP America, Inc., which provided a benefit for care rendered by out-of-network providers. EIC sent a bill to Aetna which resulted in Aetna paying EIC $4,165.00.

41.     Then, on January 27, 2014, EIC provided infusion services to Patient #3. Patient #3 had a Self-Funded ERISA plan referenced as "Aetna Choice POS II" through her employment with Saudi Arabian Oil Company (Saudi Aramco Services), which was the plan sponsor. The plan provided for a benefit of 100% of the reasonable and customary charges to out-of-network providers. EIC sent a bill for $10,630.00 to Aetna for these services, and Aetna responded with an EOB on August 5, 2014. The EOB reduced the bill to $800.00 on various grounds. Then, the EOB calculated the amount owed by Aetna as $800.00, which represents the 100% of the amounts allowed as calculated by Aetna. However, Aetna did not pay EIC the $800.00 that it owed. Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on patient #25 and patient #27. No explanation was given for why Aetna believed that the $4,881.06 paid on Patient #25 and the $4,165.00 paid on Patient #27 was improper. The failure to pay was a breach of the terms of the plan for Patient #3 and was a breach of other duties imposed by law on Aetna.

**Example 6- Patient #6**

42.     Patient #27 received infusion services from EIC on December 16, 2013. Patient #27 had a Self-Funded ERISA plan through SAP America, Inc., which provided a benefit for care rendered by out-of-network providers. EIC sent a bill to Aetna which resulted in Aetna paying EIC $4,165.00.

43.     Patient #5 received infusion services from EIC on April 16, 2013. Patient #5 had a Self-Funded ERISA plan through Bayer Corporation, which provided a benefit for care rendered by

out-of-network providers. EIC sent a bill to Aetna which resulted in AETNA paying EIC $6,400.00.

44.     Then, on January 5, 2015, EIC provided infusion services to Patient #6. Patient #6 had a Self-Funded ERISA Exempt plan referenced as "Aetna Choice POS II" through her employment with TRS-Activecare, which was the plan sponsor. The plan provided for a benefit of 60% of the reasonable and customary charges to out-of-network providers. EIC sent a bill for $3,500.00 to Aetna for these services, and Aetna responded with an EOB on February 2, 2015. The EOB reduced the bill to $69.13 on various grounds. Then, the EOB calculated the amount owed by Aetna as $41.48, which represents 60% of the amounts allowed as calculated by Aetna. However, Aetna did not pay EIC the $41.48 that it owed. Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on Patient #27 and Patient #5. No explanation was given for why Aetna believed that the $4,164.00 paid on Patient #27 and $6,400.00 paid on Patient #5 was improper. The failure to pay was a breach of the terms of the plan for Patient #6 and was a breach of other duties imposed by law on Aetna.

**Example 7- Patient #8**

45.     Patient #23 received infusion services from EIC on May 14 and 24, 2013. Patient #23 had a Self-Funded ERISA plan through Anadarko Petroleum Corporation, which provided a benefit for care rendered by out-of-network providers. EIC sent a bill to Aetna which resulted in Aetna paying EIC $18,994.32 for both dates of service. Then, on November 15, 2013, EIC provided infusion services to Patient #8. Patient #8 had a Self-Funded ERISA plan referenced as "Aetna Choice POS II" through her employment with General Electric Company, which was the plan sponsor. The plan provided for a benefit of 60% of the reasonable and customary charges to out-of-network providers. EIC sent a bill for $9,480.00 to Aetna for these services, and Aetna

14

responded with an EOB on July 22, 2014. The EOB reduced the bill to $3,005.41 on various grounds.

46.     Then, the EOB calculated the amount owed by Aetna as $1,803.25, which represents 60% of the amounts allowed as calculated by Aetna. However, Aetna did not pay the $1,803.25 that it owed. Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on Patient #23. No explanations were given for why Aetna believed that the $18,994.32 on Patient #23, for the dates described above, were improper. The failure to pay was a breach of the terms of the plan for Patient #8 and was a breach of other duties as imposed by law on Aetna.

**Example 8- Patient #11**

47.     Patient #23 received infusion services from EIC on May 16, 2013.  Patient #23 had a Self-Funded ERISA plan through Anadarko Petroleum Corporation, which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC $14,400.00.

48.     Then, on May 1, 2014, EIC provided infusion services to Patient #11.  Patient #11 had a Self-Funded ERISA plan referenced as "Aetna Choice POS II" through her employment with BP Corporation North America, Inc., which was the plan sponsor.  The plan provided for a benefit of 100% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $1,811.00 to Aetna for these services, and Aetna responded with an EOB on July 1, 2014.

49.     The EOB reduced the bill to $300.00 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $300.00, which represents 100% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $300.00 owed.  Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on patient #23.  No explanation was given for why Aetna believed that the $14,400.00 paid on Patient #23 was improper.  The failure to pay

was a breach of the terms of the plan for Patient #11 and was a breach of other duties imposed by law on Aetna.

**Example 9- Patient #12**

50.     Patient #28 received infusion services from EIC on December 6, 2011.  Patient #28 had a Fully-Insured ERISA Exempt plan through Simonton Community Church, which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC for those services.

51.     Then, on January 6, 2014, EIC provided infusion services to Patient #12.  Patient #12 had a Fully Insured ERISA plan referenced as "Aetna Open Access Managed Choice POS" through her employment with UTSI International Corporation, which was the plan sponsor.  The plan provided for a benefit of 60% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $4,280.00 to Aetna for these services, and Aetna responded with an EOB on June 18, 2014.  The EOB reduced the bill to $696.33 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $417.80, which represents 60% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $417.80 owed.  Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on patient #28.  No explanation was given for why Aetna believed that the bill it paid on Patient #28 was improper.  The failure to pay was a breach of the terms of the plan for Patient #12 and was a breach of other duties imposed by law on Aetna.

**Example 10- Patient #13**

52.     Patient #24 received infusion services from EIC on January 16, 2013, January 21, 2013 and April 10, 2013.  Patient #24 had a Self-Funded ERISA plan through BP Corporation North America Inc., which provided a benefit for care rendered by out-of-network providers.  EIC sent

a bill to Aetna which resulted in Aetna paying EIC a total amount of $16,425.68 for these dates of service.

53.     Patient #32 received infusion services from EIC on June 25, 2013. Patient #32 had a Self-Funded ERISA plan through his employer Hewlett-Packard, which provided a benefit for care rendered by out-of-network providers. EIC set a bill to Aetna which resulted in Aetna paying EIC $5,210.00.

54.     Then, on November 14, 2014 EIC provided infusion services to Patient #13.  Patient #13 had a Self-Funded ERISA plan referenced as "Aetna Choice POS II" through her employment with Manpower, Inc., which was the plan sponsor.  The plan provided for a benefit of 100% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $17,889.60 to Aetna for these services, and Aetna responded with an EOB on January 14, 2015.  The EOB reduced the bill to $16,195.60 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $16,195.60, which represents 100% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $16,195.60 owed.  Rather, Aetna's EOB stated that it offset the total amount. Aetna did not stop there. They further recouped $16,195.60 more on grounds that it overpaid on patient #24 and #32 (leaving a negative balance).  No explanation was given for why Aetna believed that the $16,425.68 paid on Patient #24 and $5,210.00 paid on Patient #32 for the dates described above was improper.  The failure to pay was a breach of the terms of the plan for Patient #13 and was a breach of other duties imposed by law on Aetna.

**Example 11- Patient #14**

55.     Patient #5 received infusion services from EIC on April 12, 2013.  Patient #5 had a Self-Funded ERISA plan through Bayer Corporation, which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC $6,400.00.

56.     Then, on December 16, 2014, EIC provided infusion services to Patient #14.  Patient #14 had a Self-Funded ERISA Exempt plan referenced as "Aetna Choice POS II" through his employment with Archdiocese of Galveston-Houston, which was the plan sponsor.  The plan provided for a benefit of 60% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $3,750.00 to Aetna for these services, and Aetna responded with an EOB on May 19, 2014.

57.     The EOB reduced the bill to $626.00 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $375.60, which represents 60% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $375.60 owed.  Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on patient #5.  No explanation was given for why Aetna believed that the $6,400.00 paid on Patient #5 was improper.  The failure to pay was a breach of the terms of the plan for Patient #14 and was a breach of other duties imposed by law on Aetna.

**Example 12- Patient #15**

58.     Patient #27 received infusion services from EIC on November 14, 2013.  Patient #27 had a Self-Funded ERISA plan through SAP America, Inc., which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC $4,315.00.

59.     Then, on February 6, 2014, EIC provided infusion services to Patient #15.  Patient #15 had a Self-Funded ERISA plan referenced as "Aetna choice POS II" through his employment with Hewlett-Packard Company, which was the plan sponsor.  The plan provided for a benefit of 100% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $10,880.00 to Aetna for these services, and Aetna responded with an EOB on June 29, 2015.

60.     The EOB reduced the bill to $80.00 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $80.00, which represents 100% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $80.00 owed.  Rather, Aetna's EOB stated that it offset the amount in excess of $80.00 on grounds that it overpaid on patient #27.  No explanation was given for why Aetna believed that the $4,315.00 paid on Patient #27 was improper.  The failure to pay was a breach of the terms of the plan for Patient #15 and was a breach of other duties imposed by law on Aetna.

**Example 13- Patient #16**

61.     Patient #27 received infusion services from EIC on December 16, 2013, July 22, 2013, and July 24, 2013.  Patient #27 had a Self-Funded ERISA plan through SAP America, Inc., which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC $33,265.00 for all three dates of service.

62.     Then, on October 10, 2014, EIC provided infusion services to Patient #16.  Patient #16 had a Self-Funded ERISA plan referenced as "Aetna Choice POS II" through his employment with IHS Inc., which was the plan sponsor.  The plan provided for a benefit of 60% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $14,900.00 to Aetna for these services, and Aetna responded with an EOB on February 2, 2015.

63.     The EOB reduced the bill to $189.00 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $113.40, which represents 60% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $113.40 owed.  Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on patient #27.  No explanation was given for why Aetna believed that the $33,265.00 paid on Patient #27 for the dates described above was an

overpayment.  The failure to pay was a breach of the terms of the plan for Patient #16 and was a breach of other duties imposed by law on Aetna.

**Example 14- Patient #21**

64.     Patient # 30 received infusion services from EIC on December 13, 2012.  Patient #30 had a Self-Funded ERISA Exempt plan through his employer, which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC $6,465.30.

65.     Then, on January 10, 2014, EIC provided infusion services to Patient #21.  Patient #21 had a Fully Insured Non-ERISA plan known as "Aetna Open Access Managed Choice POS" through her employment with Aetna Advantage PPO - Texas, which was the plan sponsor.  The plan provided for a benefit of 100% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $9,380.00 to Aetna for these services, and Aetna responded with an EOB on February 16, 2015.

66.     The EOB reduced the bill to $54.82 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $54.82, which represents 100% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $54.82 owed.  Rather, Aetna's EOB stated that it offset the entire amount owed. In addition, Aetna offset $109.64 in excess of the amount due. Aetna did this on the grounds that it overpaid on patient #30.  No explanation was given for why Aetna believed that the $6,465.30 paid on Patient #30 was improper.  The failure to pay was a breach of the terms of the plan for Patient #21 and was a breach of other duties imposed by law on Aetna.

**Example 15- Patient #20**

67.     Patient # 30 received infusion services from EIC on December 13, 2012.  Patient #30 had a Self-Funded ERISA Exempt plan through his employer, which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC $6,465.30.

68.     Then, on September 19, 2014, EIC provided infusion services to Patient #20.  Patient #20 had a Fully Insured Non-ERISA plan referenced as "Aetna Open Access Managed Choice POS" through his employment with Landmark Worldwide, which was the plan sponsor.  The plan provided for a benefit of 60% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $9,380.00 to Aetna for these services, and Aetna responded with an EOB on February 25, 2015.

69.     The EOB reduced the bill to $14.72 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $8.83, which represents 60% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $8.83 owed.  Rather, Aetna's EOB stated that it offset the entire amount owed. In addition, Aetna offset $17.66 in excess of the amount due. Aetna did this on the grounds that it overpaid on patient #30.  No explanation was given for why Aetna believed that the $6,465.30 paid on Patient #30 was improper.  The failure to pay was a breach of the terms of the plan for Patient #20 and was a breach of other duties imposed by law on Aetna.

**Example 16- Patient #19**

70.     Patient #5 received infusion services from EIC on April 25, 2013.  Patient #5 had a Self-Funded ERISA plan through her employer Bayer Corporation, which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC $14,400.00.

71.     Patient #23 received infusion services from EIC on August 8, 2013.  Patient #23 had a Self-Funded ERISA plan through her employer Anadarko Petroleum Corporation, which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC $14,589.00.

72.     Patient #27 received infusion services from EIC on July 18, 2013.  Patient #27 had a Self-Funded ERISA plan through her employer SAP America, Inc., which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna which resulted in Aetna paying EIC for those services.

73.     Then, on January 6, 2014, EIC provided infusion services to Patient #19.  Patient #19 had a Self-Funded ERISA Exempt plan referenced as "Aetna Choice POS II" through her employment with Texas Public Employee Group Ins. Program, which was the plan sponsor.  The plan provided for a benefit of 100% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $4,230.00 to Aetna for these services, and Aetna responded with an EOB on July 24, 2014.  The EOB reduced the bill to $3,338.13 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $3,338.13, which represents 100% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $3,338.13 owed.  Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on patients #5, 23, and 27.  No explanation was given for why Aetna believed that the amounts billed on these patients were improper for the dates described above.  The failure to pay was a breach of the terms of the plan for Patient #19 and was a breach of other duties imposed by law on Aetna.

**Example 17- Patient #17**

74.     Patient #27 received infusion services from EIC on July 30, 2013, July 22, 2013, and July 24, 2013.  Patient #27 had a self-funded ERISA plan through her employer SAP America, Inc.,

which provided a benefit for care rendered by out-of-network providers.  EIC sent a bill to Aetna for which resulted in Aetna paying EIC $43,880.00 for those services.

75.     Then, on April 16, 2014, EIC provided infusion services to Patient #17.  Patient #17 had a self-funded ERISA plan as "Aetna Choice POS II" through her employment with Friedkin Companies Inc., which was the plan sponsor.  The plan provided for a benefit of 100% of the reasonable and customary charges to out-of-network providers.  EIC sent a bill for $32,729.20 to Aetna for these services, and Aetna responded with an EOB on May 26, 2014.  The EOB reduced the bill to $31,791.20 on various grounds.  Then, the EOB calculated the amount owed by Aetna as $31,791.20, which represents 100% of the amount allowed as calculated by Aetna.  However, Aetna did not pay EIC the $31,791.20 owed.  Rather, Aetna's EOB stated that it offset the amount in full on grounds that it overpaid on Patient #27 on a date of service described above.  No explanation was given for this rationale. The failure to pay was a breach of the terms of the plan for Patient #17 and was a breach of other duties imposed by law on Aetna.

76.     Aetna has no right to recoup overpayments made for services rendered to one patient by offsetting legitimate payments owed on a different patient.  In this connection, it is important to remember that EIC does not have a contract with Aetna.  Plaintiff understands that Aetna has contracts with its in-network providers that may allow Aetna to recoup against the in-network provider in the event of an overpayment.  However, without a contract with Aetna, EIC stands in the shoes of the patients as a result of the assignments signed by the patients. The following hypothetical demonstrates why Aetna is not allowed to recoup against different patients:

> Sickly Sam receives a bill from EIC for infusion services rendered.  Sam has not executed an assignment in favor of EIC, so he sends the bill directly to Aetna for reimbursement to the extent that his plan allows reimbursement for out-of-network providers.  Aetna accepts Sam's bill from EIC, calculates the reimbursable amount, and pays Sam the amount Aetna owes pursuant to the terms of his plan.  Sam then pays what he owes to EIC.  A year later, Delightful Debbie receives infusion services from EIC and subsequently receives a bill

23

from EIC for the services rendered.  Debbie has not signed an assignment in favor of EIC.
Debbie sends EIC's bill to Aetna for reimbursement according to the terms of her plan.
About the time Aetna receives Debbie's bill, Aetna decides that it overpaid Sam a year
earlier.  Aetna then sends Debbie an EOB explaining that the terms of her health benefits
plan do, in fact, provide a benefit for EIC's bill, but that Aetna is not going to pay Debbie
because Aetna overpaid Sam a year earlier.  Aetna's EOB does not provide any explanation
about why Aetna thinks it overpaid Sam, nor does Aetna explain its basis for trying to
compel Debbie to bear the burden of Sam's recoupment obligation.  Debbie responds that
she does not even know Sam and that Aetna should pay her claim and work things out with
Sam separately.  When Aetna refuses to pay, Debbie sues Aetna for failing to pay her claim.

77.     The only difference between the hypothetical above and the actual practice of Aetna as

alleged herein is that EIC's patients do execute an assignment in favor of EIC, which allows EIC

to stand in the place of the patients.  However, the assignment does not alter Aetna's legal

obligation to pay claims to each patient based on the merits of each individual claim.[5]

Significantly, each time Aetna claimed an overpayment for one patient only to recoup later against

a second patient, EIC's bill for the second patient remained unpaid – which means that the second

patient is liable to EIC for the entire bill.  Thus, Aetna's recoupment practices improperly and

illegally leave EIC patients exposed to their entire bill when, in fact, these patients are entitled to

have their bills at least partially paid according to the terms of their benefit plans/policies.

78.     The pattern of paying and then improperly recouping, as explained and detailed above,

occurred over and over again between 2012 and the present.  For each recoupment, Aetna has

admitted to EIC in a written EOB precisely how much is owed under the terms of the patient's

plan/policy.  Indeed, the very concept of a recoupment presupposes that the bill being recouped

against is a valid, legitimate claim.  EIC alleges that Aetna should have paid instead of recouping

and seeks the amount recouped in this lawsuit.  (EIC also seeks other damages as alleged herein).

Thus, Aetna intentionally or recklessly underpaid EIC for claims and services provided at or by

---

[5] Essentially, Aetna wanted to treat EIC as if it were an in-network provider for purposes of recoupment without giving
EIC any the protections associated with being in-network, including the higher reimbursement given to in-network
providers.

EIC to Aetna's insureds.  Additionally, Aetna failed to pay these claims promptly.   Aetna significantly underpaid, or in some instances paid nothing at all, for infusion services performed by EIC, contradicting the healthcare plans of its subscriber patients. Aetna significantly underpaid these claims solely for financial benefit to Aetna. Aetna's failure to pay what it was obligated to pay for procedures performed at EIC resulted in direct financial benefit to Aetna.

79.    Aetna's representations that claims were payable (and its initial payments of the claims) induced EIC to continue treating patients when, in fact, Aetna had no intention of allowing EIC to keep the money initially paid.  Rather, Aetna engaged in a scheme where it represented to EIC an allowable amount of reimbursement, paid such allowable amount, and then recouped most of the money paid months or years later.  Aetna's statements that EIC's bills for infusion services were allowable and payable were false because at the time these statements were made, Aetna knew that it was going to recoup much of the money at a later date. EIC relied on these statements in making its business plan.  EIC reasonably assumed that if a claim was payable for one patient who had Lyme disease and for whom Dr. Salvato had ordered IV antibiotics, then another patient who had the same condition, who was treated by the same physician and who had a prescription for the same IV antibiotic therapy, would also be payable.  EIC spent significant amounts of money in reliance on such false representations.

80.    Aetna's improper recoupments, which were often taken more than a year after the services were provided, were significant. For example, for several of EIC's patients, Aetna's recoupments took more than 85% of the money it had originally paid over the life of EIC's treatment of that patient.  This sudden elimination of vital revenue severely hampered EIC's operations. If EIC had known that Aetna was going to engage in a massive recoupment effort that would cripple EIC's cash flow, it would have made preparations for such.   EIC was damaged by Aetna's

misrepresentations in terms of the expenses incurred for future treatment as well as in terms of

consequential damages resulting from the cash flow crunch created by these recoupments.

81.     Regarding any recoupments made with respect to the claims identified in 1-A, 1-B, and 1-

E, Aetna is an ERISA fiduciary.  This is true regardless of whether Aetna insures a plan directly

or whether it exercises discretionary authority or control as the administrator of a self-funded plan.

Aetna therefore owes fiduciary duties to all members and subscribers in its ERISA plans and also

to EIC as a beneficiary and assignee of the Assignment of Benefits signed by Aetna's

members/subscribers who receive services at EIC.

82.     For each instance of recoupment, Aetna's claim that it initially made an overpayment was

made in bad faith.  Aetna conducted no internal audit and did not take commercially reasonable

efforts to determine whether an overpayment had, in fact, occurred.   Rather, Aetna acted

arbitrarily, without regard to any standards, and without guiding principles in determining when

to seek a recoupment.  For example, Aetna often recouped more than the actual amount of benefits

paid. This is demonstrated in the following chart:

**Recouping More Than Aetna Actually Paid – Patient 33**

| Service Date | Amount Billed | Stated Amount Allowed (and Ultimately Paid) | Total Recoupments | Total Amount Recouped | Balance after Recoupment |
|---|---|---|---|---|---|
| 4/16/2013 | $7,130.00 | $6,400.00 | 3 | $10,624.92 | -4224.9 |
| 9/5/2014 | $1,585.00 | $868.00 | 1 | $1,048.00 | -180.0 |
| 9/8/2014 | $1,585.00 | $868.00 | 1 | $1,048.00 | -180.0 |
| 9/3/2014 | $1,585.00 | $468.00 | 1 | $1,124.13 | -656.1 |
| 3/20/2013 | $7,130.00 | $6,400.00 | 4 | $8,212.32 | -1812.3 |
| 3/27/2013 | $7,280.00 | $6,400.00 | 10 | $7,876.00 | -1476.0 |
| 1/23/2015 | $7,150.00 | $0.00 | 2 | $1,868.80 | -1868.8 |
| 9/11/2014 | $1,585.00 | $0.00 | 1 | $1,310.00 | -1310.0 |

| 9/22/2014 | $1,585.00 | $0.00 | 1 | $1,310.00 | -1310.0 |
| 9/24/2014 | $1,585.00 | $0.00 | 1 | $1,310.00 | -1310.0 |
| 9/29/2014 | $1,585.00 | $0.00 | 1 | $1,310.00 | -1310.0 |
| 10/6/2014 | $1,585.00 | $0.00 | 1 | $1,310.00 | -1310.0 |
| 1/19/2015 | $6,900.00 | $0.00 | 1 | $1,114.40 | -1114.4 |
| 8/28/2014 | $1,585.00 | $0.00 | 1 | $1,048.00 | -1048.0 |
| 9/2/2014 | $1,585.00 | $0.00 | 1 | $1,048.00 | -1048.0 |
| 1/26/2015 | $14,300.00 | $0.00 | 3 | $934.40 | -934.4 |
| 1/21/2015 | $6,900.00 | $0.00 | 1 | $865.00 | -865.0 |
| 11/25/2012 | $0.00 | $0.00 | 1 | $490.05 | -490.1 |
| 2/2/2015 | $3,500.00 | $0.00 | 1 | $192.00 | -192.0 |

83.     As this chart demonstrates, Aetna recouped three different times for services rendered on April 16, 2013, for a total recoupment of $10,624.92.  Thus, Aetna recouped $4,224.92 *more* than it originally paid for that service.  In all, EIC has uncovered 19 instances where EIC recouped more than it actually paid for patient #33.  This practice continued for many other patients as well.

84.     Additionally, Aetna was very inconsistent in the amounts it recouped from EIC.  For example, Patient #27 received treatment on July 29, 2013, and EIC submitted a bill to Aetna for $22,010.00 for the services rendered. Aetna stated that it would pay $14,765.60 and then actually paid that amount. Later, Aetna recouped $44.61 for that day of treatment, leaving EIC with a total payment of $14,720.99. Then, Patient #27 received essentially the exact same treatment one day later (July 30, 2013) and EIC again submitted a bill for $22,010.00. Aetna stated that it would pay $14,780.00 and then actually paid that amount. However, Aetna later recouped $13,248.00 leaving EIC with a total payment of only $1,532.00 for that day of treatment.  This pattern of inconsistent,

unexplained, unprincipled recoupments was rampant in Aetna's dealings with EIC, and demonstrates Aetna's bad faith.

85.     The delay in the recoupment was also significant.  As the chart below depicts, Aetna recouped more than 20 times because of alleged overpayments regarding patient #33, but it waited more than two years before attempting any recoupment.

### Delayed Recoupment – Patient 33

| Service Date | Stated Amount Allowed (and Ultimately Paid) | Notice of Recoupment | Delay Period | Amount Recouped |
|---|---|---|---|---|
| 12/7/2011 | $4,000.00 | 1/22/2014 | 777 | $2,920.00 |
| 12/30/2011 | $6,400.00 | 1/20/2014 | 752 | $2,587.02 |
| 12/30/2011 | $6,400.00 | 1/21/2014 | 753 | $52.08 |
| 12/30/2011 | $6,400.00 | 1/22/2014 | 754 | $3,200.90 |
| 1/3/2012 | $6,735.00 | 1/29/2014 | 757 | $5,840.00 |
| 1/4/2012 | $6,400.00 | 2/12/2014 | 770 | $1,479.19 |
| 1/4/2012 | $6,400.00 | 2/14/2014 | 772 | $9.47 |
| 1/4/2012 | $6,400.00 | 2/17/2014 | 775 | $4,254.74 |
| 1/9/2012 | $6,607.00 | 1/10/2014 | 732 | $5,840.00 |
| 1/10/2012 | $6,607.00 | 2/10/2014 | 762 | $5,840.00 |
| 1/13/2012 | $6,607.00 | 2/17/2014 | 766 | $95.69 |
| 1/13/2012 | $6,607.00 | 2/18/2014 | 767 | $5,744.31 |
| 1/16/2012 | $6,607.00 | 2/18/2014 | 764 | $376.51 |
| 1/16/2012 | $6,607.00 | 2/24/2014 | 770 | $5,463.49 |
| 1/20/2012 | $6,717.00 | 2/4/2014 | 746 | $5,840.00 |
| 1/23/2012 | $6,607.00 | 2/4/2014 | 743 | $5,436.55 |
| 1/23/2012 | $6,607.00 | 2/7/2014 | 746 | $292.42 |
| 1/23/2012 | $6,607.00 | 2/10/2014 | 749 | $63.03 |
| 1/25/2012 | $6,195.41 | 1/29/2014 | 735 | $554.28 |

| 1/26/2012 | $6,558.00 | 3/25/2014 | 789 | $1,565.49 |
| 1/26/2012 | $6,558.00 | 4/7/2014 | 802 | $4,340.51 |

86.     These and other wrongful practices reveal that Aetna did not simply change its mind about whether it was going to pay the claims on which it later recouped; Aetna never intended to let EIC keep the money.  Aetna paid the claims intending to recoup later.

## OTHER WRONGFUL PRACTICES BY AETNA

87.     In addition to wrongfully recouping as alleged above, Aetna also engaged in several other improper and abusive practices.  For example, EIC repeatedly attempted to get an explanation from Aetna about why it was claiming overpayments.  Virtually every time EIC got an EOB wherein Aetna "self-helped" with a recoupment, someone from EIC would contact Aetna asking about the basis for the alleged overpayment.  However, Aetna frequently did not provide an explanation at all. When it did, it would provide cryptic comments such as "lack of medical necessity" without further support or explanation.

88.     Sometimes, when EIC attempted to challenge the recoupment, Aetna responded that it was too late because the overpayment had occurred over a year earlier.  Of course, the problem with this logic is that EIC was not challenging Aetna's initial decision to pay the claim, only its decision to recoup the claim it had previously paid.  Thus, to use the date of Aetna's initial payment to calculate the deadline to challenge the recoupment was disingenuous and in bad faith.  With respect to all the recoupments alleged herein, Aetna has refused to cooperate, refused to provide information and/or made outright false statements.

89.     Aetna's failure to pay, or threats not to pay, for healthcare services performed by EIC to Aetna insureds are acts of coercion and intimidation. The practice of intentionally under-paying out-of- network providers is nothing new to Aetna or to entities, like Ingenix, that have assisted

Aetna with regard to payment of claims in the past. Because it was a database that had the effect of allowing Aetna and others to systematically "stick consumers with billions of dollars that the insurance industry should have been paying," Ingenix was forced to close down the database. See Hearing before the United States Senate Committee on Commerce, Science and Transportation, S. Hrg. 11-37, Part 2 (March 31, 2009).

90.     The civil enforcement section of ERISA, particularly 502(c), codified at 29 U.S.C. § 1132(c)(1)(B) provides that a participant or beneficiary is entitled to request claims rejection information from the administrator. If the administrator does not provide the information within 30 days, the administrator may be liable for up to $100 a day, per claim.

91.     EIC has requested from Aetna both plan and plan associated documents on claims made by EIC. Aetna has refused and continues to refuse to provide those documents.  EIC is entitled to the requested plan documents and associated documents. EIC is also entitled to a civil penalty of $100 per day for failure to timely comply with the request under 29 U.S.C. § 1132(c), until the documents are produced.

## CAUSES OF ACTION

**First Cause of Action- Aetna's Failure to Comply with the Group Plans in Violation of ERISA**

92.     EIC incorporates by reference the preceding paragraphs.  This cause of action applies to all instances where Aetna recouped prior payments made against employer-sponsored ERISA plans, including those  listed in Exhibits 1-A, 1-B and 1-E.

93.     EIC is entitled to enforce the terms of the plans, as assignee of directly insured subscribers/members under 29 U.S.C. § 1132(a)(1)(B), for whom Aetna has made claims determinations without valid data and/or has done so in an arbitrary fashion, and to obtain appropriate relief under such provision. Under § 502(a) of ERISA, EIC (as beneficiary and

30

assignee) is entitled to recover benefits due to EIC and/or the patients from whom EIC received Assignments of Benefits, under the terms of the plans between the patients and Aetna.

94.     Aetna acted as a fiduciary to its beneficiaries, including EIC as assignee, because Aetna exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to those plan beneficiaries. As a fiduciary under ERISA, Aetna is subject to a civil action under § 502(a) of ERISA. In violation of ERISA, Aetna failed to make payments of benefits to EIC as assignee, as required under the terms of the plans between the patients and Aetna. In further violation of ERISA, Aetna failed to provide EIC as assignee with all rights under the terms of the plan between the patients and Aetna, as required by ERISA. Aetna failed to make clear to EIC as an assignee its rights to future benefits under the terms of the plans between the patients and Aetna, as required by ERISA.

95.     Aetna breached the terms of the plans, by making claims determinations that had the effect of reimbursing less than the stated percentage of their provider's actual charges without valid evidence or information to substantiate such determinations and/or in an arbitrary fashion.

96.     As a proximate result of Aetna's wrongful acts, EIC has been damaged in the amount in excess of the jurisdictional limits of this Court.

**Second Cause of Action- Aetna's Breach of Fiduciary Duty Under ERISA**

97.     EIC incorporates by reference the preceding paragraphs. This cause of action applies to all instances where Aetna recouped prior payments made against employer-sponsored ERISA plans, including those  listed in Exhibits 1-A, 1-B and 1-E.

98.     EIC, as the assignee of ERISA subscribers/members, is entitled to assert a claim for relief under Aetna's breach of the fiduciary duties of loyalty and care under 29 U.S.C. § 1132(a)(3).

99.     Aetna acted as "fiduciary" to EIC as an assignee in connection with the beneficiaries' group health plans, as such term is understood under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). In its capacity as the insurer, plan administrator, claims administrator and/or fiduciary of ERISA group plans, Aetna is a fiduciary.

100.    Aetna breached its duties to EIC as assignee by underpaying claims without valid data or evidence to substantiate the amount paid, and/or doing so in an arbitrary fashion, by omitting material information about its determinations from EIC and/or by making misrepresentations about its claims determinations. Specifically, Aetna acted as fiduciary to EIC as assignee because Aetna exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to those plan beneficiaries. The exercise of discretion in such determinations of plan benefits is an inherently fiduciary function that must be carried out in accordance with the terms of the plan, not in a manner to maximize profit to Aetna by paying lesser amounts to EIC.

101.    Aetna also breached its fiduciary duty to EIC by intentionally engaging in a scheme whereby Aetna would initially approve and pay claims only to subsequently recoup those payments months or even years later without a rational basis for such recoupment as alleged more fully above.

102.    By engaging in the conduct described above, Aetna failed to act with the care, skill, prudence and diligence that a prudent plan administrator would use in the conduct of an enterprise of like character or to act in accordance with the documents and instruments governing the plan. Fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan. ERISA § 404(a)(1)(B) and (D), 29 U.S.C. § 1104(a)(1)(B) and (D).

103.    Aetna violated its fiduciary duty of care by, among other things, determining whether plan benefits would be paid, and/or determining the amounts of plan benefits that would be paid, to those plan beneficiaries based on maximizing profit to Aetna, rather than based on the terms of the plans and applicable statutes and regulations.

104.    As a fiduciary of group health plans under ERISA, Aetna owes beneficiaries a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of beneficiaries. Aetna cannot, for example, make benefit determinations for the purpose of maximizing profit to Aetna at the expense of beneficiaries.

105.    Aetna violated its fiduciary duty of loyalty by, among other things, determining whether plan benefits would be paid, and/or determining the amounts of plan benefits that would be paid, to those plan beneficiaries based on maximizing profit to Aetna, rather than based on the terms of the plans and applicable statutes and regulations.

106.    EIC is entitled to relief for Aetna's violation of its fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including restitution, and its removal as a breaching fiduciary.

107.    As a direct and proximate cause of Aetna's ERISA breaches, EIC has been and continues to be damaged in an amount in excess of the jurisdictional limits of the Court.

**Third Cause of Action- Aetna's Failure to Provide Full and Fair Review Under ERISA**

108.    EIC incorporates by reference the preceding paragraphs. This cause of action applies to all instances where Aetna recouped prior payments made against employer-sponsored ERISA plans, including those  listed in Exhibits 1-A, 1-B and 1-E.

109.    Aetna functions as the "plan administrator" within the meaning of such terms under ERISA when it insures a group health plan, or when it is designated as a plan administrator for such plan. As such, EIC is entitled to assert a claim for relief under 29 U.S.C. § 1132(a)(3).

110.    Although Aetna was obligated to provide a "full and fair review" of all claims, it failed to do so in connection with claims paid to EIC, and otherwise failed to make necessary disclosures pursuant to 29 U.S.C. § 1133 (and its regulations).

111.    EIC was proximately harmed by Aetna's failure to comply with 29 U.S.C. § 1133 and has been damaged in an amount in excess of the jurisdictional limits of the Court.

**Fourth Cause of Action- Aetna's Violations of Claims Procedure Under ERISA**

112.    EIC incorporates by reference the preceding paragraphs. This cause of action applies to all instances where Aetna recouped prior payments made against employer-sponsored ERISA plans, including those  listed in Exhibits 1-A, 1-B and 1-E.

113.    Aetna is an insurance company that is subject to regulation under the insurance laws of more than one state, including the State of Texas. Further, Aetna processes benefit claims for self-funded plans providing claims filing and notices of decisions to policyholders in such plans.

114.    Aetna is an insurance company and must comply with claims procedures defined by law (e.g., 29 CFR § 2560.503-1) for subscribers and members. EIC is therefore entitled to seek additional relief if an insurance company failed to comply with federal law. 29 U.S.C. § 1132(a)(3).

115.    Aetna violated these claims procedure regulations by engaging in conduct that rendered its claims procedures and appeals process unfair to subscribers and their assignee.

116.    As a proximate result of its violation of such regulations, EIC has been harmed in an amount in excess of the jurisdictional limits of this Court.

**Fifth Cause of Action- Aetna's Violations of the Texas Prompt Pay Act**

117.    EIC incorporates by reference the preceding paragraphs.  This cause of action applies to all policies or plans that are not covered by ERISA including those listed in Exhibits 1-C, 1-D and 1-F.

118.    The Texas Prompt Pay Act requires companies like Aetna who receive a "clean claim" to determine, within a specified time, whether the claim is payable: 45 days for non-electronic claims and 30 days for electronic claims. Within these times, insurers must either (1) pay the claim, (2) partially pay and partially deny the claim and notify the provider in writing of the reason for partial denial, or (3) deny the claim in full and notify the provider in writing of the reason for denial. Tex. Ins. Code § 843.338, 1301.103. The Prompt Pay Act imposes a range of penalties for late payment of payable "clean claims." § 1301.137(a) (imposing penalties when "a clean claim submitted to an insurer is payable and the insurer does not determine ... that the claim is payable and pay the claim on or before the date the insurer is required to make a determination or adjudication of the claim").

119.    In this case, Aetna violated virtually all the provisions of the Prompt Pay Act. Every time Aetna recouped, it admitted that the claim is a "clean claim". But it did not pay, but offset the claim asserting a bogus theory that a previous claim was overpaid.  It did not make a timely determination of whether the claim is payable, did not provide adequate explanations for why it was denying payment and delayed payment on EIC's claims.  As such, Aetna should be Ordered to pay the penalties provided under the statute.

120.    EIC alleges that the Texas Prompt Pay Act applies to all claims that are not preempted by ERISA. Specifically, EIC alleges that, as an out of network provider, the Prompt Pay Act applies because the infusion services at issue were given and rendered at the request of an Aetna in-

network physician and where there was no reasonably accessible in-network provider that could have provided the out-patient infusion services that EIC provided.

121.    As a proximate result of its violations of such regulations and laws, EIC has been harmed in an amount in excess of the jurisdictional limits of this Court.

**Sixth Cause of Action- Breach of Contract**

122.    EIC incorporates by reference the preceding paragraphs. This cause of action applies to all policies or plans that are not covered by ERISA including those listed in Exhibits 1-C, 1-D and 1-F.

123.    Aetna is liable to EIC for breaches of contracts with its insureds.  As explained more fully above, EIC was assigned valid contractual rights held by EIC's patients who received infusion services.  These contractual rights are defined by the terms of the individual insurance contracts or benefit plans.  EIC has outlined the terms of these contracts in the factual allegations above and has provided specific examples of such.  Generally these insurance contracts provide a benefit that is equal to a percentage of the reasonable and customary charge for EIC's infusion services – between 50% and 100% of reasonable and customary charge depending on the terms of the specific plan or policy.

124.    EIC and/or the patients fully performed the terms of the contract by faithfully paying their portion of the insurance premiums, but Aetna breached by not paying the claims as required by the contracts.  For all the recoupments that occurred on the policies and plans described herein, Aetna breached the contractual provisions requiring payment of a benefit to the insured/member when they initially paid but then sought and obtained recoupment against a different and valid claim.  EIC was damaged by these breaches.  As the beneficiary of an assignment of claims and benefits, EIC is entitled to damages breach of contract damages and attorney's fees.

**Seventh Cause of Action- Fraud**

125.    EIC incorporates by reference the preceding paragraphs.

126.    Aetna intentionally made material misrepresentations of fact which were intended to induce EIC to act and which did induce EIC to act in reliance on such misrepresentations.  Such false representations include Aetna's repeated statements that certain claims submitted by EIC were payable by Aetna when, in fact, Aetna never intended to allow EIC to keep such payments. EIC relied on these representations to its detriment and now seeks recovery for such reliance damages.

**Eighth Cause of Action- Negligent Misrepresentation**

127.    EIC incorporates by reference the preceding paragraphs.

128.    Aetna made representations to EIC in the course of the Aetna's business or in a transaction in which the Aetna had an interest.  These misrepresentations included the precertification discussions EIC and Dr. Salvato had with Aetna wherein Aetna pre-approved the infusion services and when Aetna sent documentation stating that claims were payable (and actually paid) only to recoup on those payments months or years later.  These misrepresentations were intended for EIC's guidance.  Aetna did not exercise reasonable care or competence in obtaining or communicating the information.   EIC justifiably relied on such representations and Aetna's negligent misrepresentations proximately caused the Plaintiff's injury.

## DAMAGES

129.    EIC incorporates by reference the preceding paragraphs.

130.    EIC is entitled to compensatory damages in an amount in excess of the jurisdictional limits of this Court.

131.    Further, EIC is entitled to damages and interest under the Texas Prompt Pay Statute in an

amount in excess of the jurisdictional limits of this Court.

132.    EIC is likewise entitled to all applicable ERISA statutory penalties, including penalties per

day per claim for Aetna's refusal to provide the required information under ERISA.

## ATTORNEY'S FEES

133.    EIC incorporates by reference the preceding paragraphs.

134.    Pursuant to ERISA § 17.41, Tex. Bus. & Comm. Code, § 38.001, et seq., Tex. Civ. Prac.

& Rem. Code, and Fed. R. Civ. P. 54(c), EIC is entitled to the award of attorney's fees.

## PUNITIVE/EXEMPLARY DAMAGES

135.    EIC incorporates by reference the preceding paragraphs.

136.    The acts and omissions on the part of Aetna were committed with malice and were

intentional in nature, justifying the imposition of punitive and exemplary damages against Aetna,

jointly and severally, in an amount in excess of the jurisdictional limits of this Court.

## REQUEST FOR RELIEF

137.    EIC incorporates by reference the preceding paragraphs.

138.    EIC seeks the damages alleged herein for all wrongful recoupments and payments

withheld, for the ERISA violations alleged herein, for the breach of contract(s) alleged herein, in

reliance on Aetna's misrepresentations and fraud as alleged herein, and for all other breaches as

alleged herein.

139.    EIC also seeks penalties and interest for all statutory and regulatory violations as alleged

herein.

140.    Pursuant to Section 37.009 of the Tex. Civ. Prac. & Rem. Code and 28 U.S.C. § 201, EIC

seeks to recover its costs and all reasonable and necessary attorneys' fees as are equitable and just

in the litigation of this matter, which will be in an amount in excess of the jurisdictional limits of the court.

## PRAYER

141.    For these reasons, EIC asks for judgment of and against Aetna for damages; penalties; attorneys' fees; punitive damages; pre-judgment and post-judgment interest at the highest rates allowed by law; taxable costs; and such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

THE PACKARD LAW FIRM

By: _____

Daniel W. Packard
State Bar No. 00791392
Email: dan@packardfirm.com
1100 NW Loop 410, Suite 104
San Antonio, Texas 78213
Telephone Number: (210) 340-8877
Fax Number: (210) 340-8787
Diogu Kalu Diogu II, LL.M.
P.O. Box 994
Fulshear, Texas 77441
Email: diogu.diogu.law.firm@gmail.com
Telephone: (713) 791-3225
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this instrument has been forwarded, in accordance with the Federal Rules of Civil Procedure on the 8th day of December, 2017 to:

John B. Shelby                                                    Via CM/ECF
Mitchell Reid
Dimitri Zgourides
Andrews Kurth Kenyon LLP
600 Travis, Suite 420
Houston, Texas 77002
Attorneys for Defendant

Bruce K. Watkins                                                 Via CM/ECF
Watkins & Watkins
24 Greenway Plaza, Suite 1710
Houston, Texas 77046
Intervenor

Diogu Diougu, II.                                                Via CM/ECF
Diogu Kalu Diogu II, LL.M.
P.O. Box 994
Fulshear, Texas 77441

_____
Daniel W. Packard